N. MARK KLAPPENBACH, Judge
This is an appeal following a divorce proceeding between appellant Mike Steeland and appellee Bobbie Jo Steeland. The parties were married in 2004 and have a daughter. The parties divorced by a decree entered in September 2011, and custody of their child was awarded to Bobbie Jo, but the remaining issues were reserved for later determination. In an order filed on December 19, 2016, the trial court resolved the issues of Mike's child-support obligation and the division of assets and debts. Mike appeals the December 2016 order, arguing the trial court clearly erred in its determination of his child-support obligation; in its failure to establish a value of PSI Rentals, LLC; in awarding the home where the parties lived to Bobbie Jo; and in not explaining why it divided the marital estate unevenly. We affirm as to child support, but we reverse and remand as to the remaining three points. Therefore, we affirm in part and reverse and remand in part.
We first address Mike's argument that the trial court erred by using his gross weekly income instead of determining his net weekly income on which to calculate his child-support obligation. He argues that the trial court found his average weekly income to be $2,000 but that this was incorrect because the trial court failed to deduct "federal and state income tax and medical insurance" as required by Administrative Order No. 10. Mike asserts that his net weekly income was $1,247.91, as shown on his Affidavit of Financial Means (AFM). Mike adds that the trial court erred by failing to explain why it deviated his support obligation upward to include payment of the child's tuition, bus *272 fees, and all health/dental/orthodontic needs.
Bobbie Jo argues that Mike is self-employed and underreported his income on his AFM and that the evidence would have supported an even higher average weekly income than that set by the trial court. Bobbie Jo points out that the trial court was presented with Mike's testimony establishing that his AFM excluded certain income and that he earned $184,000 in one year. Bobbie Jo adds that the testimony showed that Mike's businesses provided him with a company vehicle, fuel, insurance, and a cell phone. Bobbie Jo asserts that, given the evidence provided to the trial court, it cannot have abused its discretion in setting Mike's child support based on a $2,000-per-week-average-income figure.
Our standard of review for an appeal from a child-support order is de novo on the record, but we will not reverse a finding of fact by the trial court unless it is clearly erroneous. Ward v. Doss , 361 Ark. 153, 205 S.W.3d 767 (2005). A finding is clearly erroneous when the reviewing court, on the entire evidence, is left with a definite and firm conviction that a mistake has been made. Mathews v. Mathews , 368 Ark. 252, 244 S.W.3d 660 (2006). We give due deference to the trial court's superior position to determine the credibility of the witnesses and the weight to be given their testimony. Id. In a child-support determination, the amount of child support lies within the sound discretion of the trial court, and the trial court's findings will not be reversed absent an abuse of discretion. Id. Arkansas Supreme Court Administrative Order No. 10 defines "income" for child-support purposes intentionally broadly, and this definition is intended to encompass the widest range of sources to effectuate this state's policy to adequately support children. Troutman v. Troutman , 2017 Ark. 139, 516 S.W.3d 733.
Our de novo review of the evidence in this case supports the trial court's decision on child support. Mike agreed in his testimony that his AFM showed a gross income of $2,000 per week in salary but that it did not reflect income he received from rentals and other businesses. He testified that in years past he had made $200,000 annually but that his earnings dropped when they started having marital discord. Mike testified that his taxes showed $154,000 in W-2 income and an additional $30,000 of income, which translates into over $3,500 per week in income before proper deductions. Mike admitted that his businesses paid for medical insurance for their daughter. Mike testified that he occasionally received bonus income but that this money typically went to debt service, not into his pocket. Mike's office manager testified about how Mike conducted his businesses, the frequency and manner in which the businesses paid for personal expenses, and whether and when Mike paid the businesses back. The office manager confirmed that the businesses had paid part of Mike's attorney's fees, provided Mike a company vehicle and fuel, and provided Mike a cell phone. Given our de novo review of this record, we cannot conclude that the trial court abused its discretion or clearly erred in finding that Mike's average weekly net income for child-support purposes was $2,000. Moreover, the trial court provided an explanation as to why Mike was ordered to pay for tuition, bus fees, and the health, dental, and orthodontic needs of their child; the trial court recited that the difference in the income of the parties justified ordering Mike to pay those costs. We see no clear error and no abuse of discretion in the trial court's findings with regard to support of the parties' daughter.
*273 Mike's remaining three arguments are an attack on the trial court's division of the overall marital estate. With respect to the division of property in a divorce case, we review the trial court's findings of fact and affirm them unless they are clearly erroneous or against the preponderance of the evidence. Brown v. Brown , 373 Ark. 333, 284 S.W.3d 17 (2008). A finding is clearly erroneous when the reviewing court, on the entire evidence, is left with the definite and firm conviction that a mistake has been committed. Jones v. Jones , 2014 Ark. 96, 432 S.W.3d 36.
Trial courts in traditional equity cases have broad powers to distribute the property in order to achieve an equitable division. Russell v. Russell , 2013 Ark. 372, 430 S.W.3d 15. The trial court is vested with a measure of flexibility in apportioning the total assets held in the marital estate upon divorce, and the critical inquiry is how the total assets are divided. See Canady v. Canady , 290 Ark. 551, 721 S.W.2d 650 (1986). The overriding purpose of the property-division statute is to enable the court to make a division that is fair and equitable under the circumstances. Id.
Marital property cannot always be divided exactly equally and in kind. Jones, supra. Stated differently, the property-division statute does not compel mathematical precision in the distribution of property; it simply requires that marital property be distributed equitably. McCormick v. McCormick , 2012 Ark. App. 318, 416 S.W.3d 770 ; Coatney v. Coatney , 2010 Ark. App. 262, 377 S.W.3d 381. We will not substitute our judgment on appeal as to the exact interest each party should have but will decide only whether the order is clearly wrong. Jones, supra.
In this case, Mike argues that the trial court clearly erred in failing to assign a value to the marital asset PSI Rentals, LLC; in declaring the home where the parties and child resided "marital" and awarding it to Bobbie Jo; and in failing to explain why it made an unequal distribution of the marital assets and debts. Bobbie Jo asserts that the trial court used its broad powers to distribute marital and nonmarital property to effect the overriding purpose of Arkansas law, which is to make a fair and equitable distribution in light of these particular facts.
We first consider Mike's argument that the trial court was statutorily required to, but did not, establish the value of PSI Rentals, LLC (PSI). The trial court awarded the entirety of PSI, its assets and debts, to Mike. PSI was formed as a corporation by Mike during the marriage, making it a marital asset. Mike argues that because the trial court did not make a finding of fact as to the value of this asset, the trial court clearly erred in dividing the assets and liabilities in this case. We agree that the trial court clearly erred in failing to place a value on PSI.
The trial court stated that this award was made to offset its award of the parties' home ($100,000 value) plus proceeds from the sale of another marital asset ($5,000) to Bobbie Jo. Mike testified that PSI owned rental properties and cars and that there was some debt associated with the properties. The trial court was left with less-than-clear testimony on PSI's value. Nonetheless, the trial court was required to make a finding of fact establishing the value of PSI in order to distribute the overall marital estate in a fair and equitable manner.
Our court has remanded to the trial court when it failed to expressly assign a value to one party's interest in a particular business venture in accordance with Arkansas Code Annotated section 9-12-315(a)(4) (Repl. 2015). See Brown v. Brown , 2016 Ark. App. 172, 2016 WL 1039586 ;
*274 Farrell v. Farrell , 2013 Ark. App. 23, 425 S.W.3d 824. Pursuant to our holdings in Brown and Farrell , we reverse and remand for the trial court to determine the value of PSI. This finding may affect the overall distribution of the marital estate, so the trial court is permitted to render such findings of fact that distribute the overall marital estate in a fair and equitable manner.
Mike next contends that the trial court clearly erred in finding the home and real estate where the parties and their child resided to be marital property and awarding it to Bobbie Jo. The trial court found as follows:
This property was acquired by [Mike] prior to this marriage. During the marriage, the parties used this property as collateral for various loans, thus converting it to marital property. [Bobbie Jo] values this home at One Hundred Thousand Dollars ($100,000.00). [Bobbie Jo] is awarded the marital home as her separate property.
On this issue, we agree that Mike has established trial court error. It is undisputed that Mike acquired this property in the divorce from his first wife. Mike owed a debt to his first wife, so in 2005, Mike and Bobbie Jo borrowed $39,900 secured by a mortgage on the property to extinguish the debt to Mike's ex-wife. This debt was paid off during the marriage. It is undisputed that the parties mortgaged the home twice more during the marriage for other purposes, securing loans of $39,900 and $61,000, and that the loans were paid off during the marriage. The parties also made substantial improvements to the property during the marriage.[1]
Because Mike acquired the property before his marriage to Bobbie Jo, it was nonmarital property. The statutory definition of marital property excludes property acquired before the marriage. Ark. Code Ann. § 9-12-315(b)(1) (Repl. 2015). The trial court's finding that the property was "converted" into marital property by using it as collateral for loans is clearly erroneous. A non-owning spouse may be entitled to an interest in the other spouse's nonmarital property, but the nonmarital property itself is not transformed into marital property by virtue of the expenditure of marital funds to reduce debt or to make improvements. Jones, supra.
However, it has long been held that a non-owning spouse is entitled to some benefit when marital funds have been expended to improve or reduce the debt on the other spouse's nonmarital property. See Box v. Box , 312 Ark. 550, 851 S.W.2d 437 (1993) (holding that the trial court erred in failing to consider that marital property, in the form of marital earnings, was used to pay debt against nonmarital property); Bagwell v. Bagwell , 282 Ark. 403, 668 S.W.2d 949 (1984) (holding that a trial court may find that a non-owning spouse is entitled to some benefit by reason of marital funds having been used to pay off debts on the owning spouse's nonmarital property); Williford v. Williford , 280 Ark. 71, 655 S.W.2d 398 (1983) (holding that a non-owning spouse is entitled to some benefit when marital funds are used to improve nonmarital property).
We recognize that the circuit court is given broad powers to distribute both marital and nonmarital property to achieve an equitable division, and the overriding purpose of the property-division statute is to enable the court to make a division that is fair and equitable.
*275 Arnoult v. Arnoult , 2014 Ark. App. 82, 2014 WL 579934. Bobbie Jo may be entitled to some benefit for having expended marital funds to pay off pre- and postmarital debt on this property and to pay for improvements on the property that increased its value. Even so, the trial court was wrong to declare that Mike's premarital property transformed into marital property. For this reason, we reverse and remand for the trial court to make findings that establish the benefit to which Bobbie Jo is entitled under Arkansas law with regard to Mike's nonmarital property. Because this necessarily affects the overall distribution of the marital estate, the trial court is permitted to render such findings as are necessary to effect a fair and equitable distribution under the facts of this case.
Given our resolution of the preceding two points on appeal, which will require the trial court to reevaluate the distribution of the overall marital estate, we need not address Mike's final point on appeal.
Affirmed in part; reversed and remanded in part.
Whiteaker and Hixson, JJ., agree.

The parties laid asphalt, put in a sprinkler system, built a barn, ran electricity to the barn, installed a new air-conditioning unit, remodeled a bathroom and the children's rooms, enclosed the porch, added a pool, and planted trees and grass on the property.